Harper, J.
I am of opinion, that the deed executed by William Usher, though it could not, as has been decided, operate at law as the conveyance of Patrick Usher, must be executed in Equity as the agreement of Patrick Usher; certainly it is such an. one as the Court would execute as against Patrick Usher himself, and his legal representatives. This is not a reforming’ of the instrument, but goes on the familiar equity *1 Principle> that when ^property is attempted to be transferred by J deed, and there are circumstances to prevent its operating as a conveyance, equity will give it effect as an agreement; as in the case of Colman v. Sarrell, 1 Vesey, Jr. p. 409; 3 Bro. C. C. 12, where Bank Stock, which could only be transferred legally on the books of the Bank, was attempted to bo by deed, there is no question but that the Court would have -executed it as an agreement, if there had been a sufficient consideration, and in Wadsworth v. Wendell, 5 Johns. C. R. 224, where land was attempted to be conveyed by an instrument having in other respects the form of a conveyance, but, in consequence of “ mistake or ignorance,” as the Chancellor expresses it, without a seal. The rule is laid down generally in Morse v. Faulkner, 1 Anst. 11, that an agreement to convey, or a deficient conveyance, will bind the lands in the hands of the grantor or his heirs.
Now, there is no doubt that William Usher had authority to convey this vessel. He attempted to convey by deed, but, by mistake or ignorance, executed the deed in his own name. If an agent contracts in his own name, without disclosing his principal, the general rule of law is, that the principal, if afterwards discovered, is liable on that contract: Waring v. Favenck, 1 Campbell’s N. P. R. 85; Rymer v. Suwercrapp, *135 lb. 109; Railton v. Hodgson, 4 Taunt. 516. If William Usher, therefore, had only agreed to convey in his own name, and without reference to his principal, it follows that the principal would have been bound ; but he does refer to his principal. The terms of the deed are, “ I, William Usher, Junior, attorney in fact of Patrick Usher, owner of the brig Junietta,” &c. From a technical legal principle, and from the manner in which the deed is signed, this cannot operate as a conveyance at law ; but can there be any doubt as to what was meant ? And what is there to prevent equity giving effect to that intention ? The words “ attorney in fact of Patrick Usher,” are regarded at law as terms of description and surplusage; and when an executor sells the goods of his testator, and takes a bond payable to himself, as executor, at law this is regarded as his personal debt, and the term “ executor,” as a word of description. But is there any doubt that in equity this signifies the trust, and that the bond will be regarded as assets of the estate ? I cannot conceive a case in which equity ought to aid a defective conveyance, if not in this.
*1 think, also, with the deference which I always feel towards the judgment of the Chancellor who pronounced the decree, that the L 1 endorsement on the ship’s register constituted an equitable mortgage, and gave an equitable lien; Lord Hardwicke, in Lowthall v. Tonkins, 2 Eq. Ca. Ab. 381, explains what is meant, by goods being bound by an execution ; that is, he described the lien of an execution, “ that, if the defendant makes an assignment of his goods, unless in market overt, the sheriff may take them in execution.” To say, then, that the vendee shall not have power to sell, is in terms to say that the vendor shall have a lien. This could not operate, as a mortgage at law, because it did not change the property, and it would therefore be regarded as nothing else than a personal contract; but so to regard it in equity, would be to render it absolutely nugatory and unmeaning. The vendor had already all the security that the personal liability of the vendee could give Mm. This construction is aided by the circumstance of the vessel’s register being left in Welsh’s possession. I need not refer to the cases in which the deposit of title deeds is held, to constitute an equitable mortgage, to which this seems very analogous.
This equity, though existing, could not prevail against a subsequent purchaser for valuable consideration, without notice. The only matter on which it struck me there might be a doubt, was, whether it could prevail against creditors who had subsequently obtained legal liens. But a reference to authorities puts this out of question. In Burgh v. Francis, referred to in Taylor v. Wheeler, 2 Vernon, 564, the defect of livery in making a mortgage, was supplied against judgment creditors. In Finch v. The Earl of Winchelsea, 1 P. W. 211, it was held that an agreement to convey, on adequate consideration, would be good against a subsequent judgment. In Burn v. Burn, 3 Vesey, 582, the case of Sir Simeon Stuart is referred to, in which an incomplete agreement to mortgage was made good against a judgment. To the same effect were our own decisions, in Read v. Simmons, 2 Eq. Rep. 454, and Menude v. Delaire, 2 Eq. Rep. 565. In Taylor v. Wheeler, the defect of a surrender in a mortgage of copyhold was supplied against the assignees of the bankrupt mortgagor; here the complete legal title was in the trustees of the creditors. The Chancellor at first doubted, but said that the creditors would be entitled *136 to no more than was properly the bankrupt’s. I need hardly observe, that there is *no question of notice or want of notice to creditors ‘ J where fraud, arising out of the possession of the mortgagor or vendor, is relied on. I do not find the precise case of an attachment, but there cannot be a doubt that it must be governed by the same principles. Its lien cannot be of a higher nature than that of a judgment and execution. It holds the property that it may be rendered liable to execution. It could not take the property against the lien an of older execution, against which, however, the equitable claim would prevail. Still stronger is the case of the bankrupt’s assignees. It was a ground of the decision at law, that if any equitable lien existed, the remedy was in equity, and the plaintiff cannot be repelled, now that he comes into equity to seek it. It is therefore ordered and decreed, that the Chancellor’s decree refusing the injunction, be reversed, and that the defendants, attaching creditors of Patrick Usher, be enjoined from proceeding against the Junietta.
Johnson, J., and O’Neall, J., concurred.